IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LISSETTE SOTO,                          : Civil No. 1:25-CV-365
                                        :
        Plaintiff,                      :
                                        :
        v.                              :
                                        : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,                        :
Commissioner of Social Security,[1]     :
                                        :
        Defendant.                      :

## MEMORANDUM OPINION

## I.   Introduction

Lissette Soto filed an application under Titles II and XVI of the

Social Security Act for disability benefits and supplemental security

income on April 6, 2022.  Following a hearing before an Administrative

Law Judge ("ALJ"), the ALJ found that Soto was not disabled from her

alleged onset of disability, April 4, 2022, through the date of the ALJ's

decision, April 19, 2024.[2]

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Bisignano is substituted as the defendant in this suit.

[2] Tr. 31.

Soto now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.  After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[3] we conclude that substantial evidence supports the ALJ's findings in this case.  Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.   Statement of Facts and of the Case

Lissette Soto filed for disability benefits and supplemental security income, alleging disability due to a host of physical and mental health impairments, including arthritis, a left hip replacement, thyroid disease, acquired deformity of a limb, and bilateral hand numbness and weakness.[4]  Soto was 47 years old at the time of her alleged onset of disability, had a high school education, and had past work as a machine packager.[5]

---

[3] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
[4] Tr. 98.
[5] Tr. 31-32.

The administrative record in this case reveals that Soto suffered from a host of physical impairments.[6]  Prior to her alleged onset date, in June of 2021, Soto complained of hip pain following a left hip replacement surgery in 2019.[7]  An examination revealed a stiff gait favoring her left hip, tenderness, groin pain, and 4/5 strength in her left hip.[8]  Soto was not interested in physical therapy, and her provider noted that she may not have been completing all of her home exercises daily.[9]  Soto received an MRI of her lumbar spine in August of 2021, which showed minor spondylosis at L4-5 and L5-S1.[10]

In February of 2022, Soto presented to an orthopedic urgent care for lower back and left shoulder pain.[11]    She further reported experiencing numbness of her bilateral hands for several years.[12]  On examination, Soto had increased pain in her shoulder with range of

---

[6] Because Soto's appeal focuses only on her physical health impairments, we will forego a discussion of the records of her mental health impairments.

[7] Tr. 441.

[8] Tr. 442.

[9] Tr. 443.

[10] Tr. 477.

[11] Tr. 785.

[12] *Id.*

motion, no significant tenderness, symmetric grip strength, a negative straight leg raise, an antalgic gait, and guarded movements.[13]  Imaging of her cervical and lumbar spine showed slight narrowing at C5-C6.[14] Soto subsequently received trigger point injections in her left shoulder.[15]

Soto treated at the neurosurgery clinic at Penn State Hershey Medical Center in March of 2022 for her upper extremity pain.[16]  On examination, Soto had a normal gait, 5/5 strength in her lower and upper extremities, and pain with abduction of her left shoulder.[17]  It was recommended that she receive an MRI and undergo physical therapy.[18] Soto also met with interventional pain management around this time, where she reported that her shoulder pain had improved somewhat, and the trigger point injections were beneficial.[19]  A physical examination revealed mild to moderate tenderness, normal range of motion with pain

---

[13] Tr. 787.
[14] *Id.*
[15] Tr. 390.
[16] Tr. 427.
[17] Tr. 428.
[18] *Id.*
[19] Tr. 381.

at end ranges, and positive Hawkins and Neer's signs.[20]  Later in March, Soto complained of right hip pain and presented with an antalgic gait favoring her right leg.[21]  On examination, she had pain and crepitus with range of motion, her leg lengths were approximately equal, and she had 4/5 strength in both hips.[22]  An x-ray at this visit showed moderate to severe osteoarthritis of her right hip.[23]  She received injections in April, as she was reluctant to have surgery.[24]

Soto also underwent a cervical spine MRI in June of 2022, which showed multilevel degenerative changes.[25]  She followed up with the neurosurgery clinic at Penn State, at which time the provider reviewed the recent imaging and diagnosed her with cervical spinal stenosis and radiculopathy.[26]  It was noted that she had "a good chance of improving

---

[20] Tr. 383.
[21] Tr. 465-66.
[22] Tr. 466.
[23] *Id.*
[24] Tr. 466-69.
[25] Tr. 410.
[26] Tr. 412.

with nonsurgical treatment options," and the provider recommended physical therapy as a next step.[27]

Soto treated for her right hip pain in July of 2022, at which time she reported increased pain and difficulty with prolonged activity, specifically with walking.[28]  At this time, she was working as a housekeeper.[29]  It was noted that Soto had been using a cane or walker for ambulation, and that she tried injections and physical therapy, both of which were unsuccessful.[30]  An examination revealed an antalgic gait, restricted hip motion, pain and crepitus with range of motion, and 4/5 hip strength.[31]  Her provider recommended a total replacement of her right hip, which she received in August.[32]

At her first postoperative visit in September of 2022, the provider noted Soto was doing well, taking her narcotic pain medications, and using a cane or walker for ambulation.[33]  She was advised to continue

---

[27] Tr. 412-13.
[28] Tr. 470.
[29] *Id.*
[30] *Id.*
[31] Tr. 471.
[32] Tr. 471, 492.
[33] Tr. 494.

6

physical therapy.[34]  An x-ray interpretation at this visit showed that the surgical components were located and "well positioned" and that Soto's "[l]eg lengths are approximately equal."[35]  Soto's initial physical therapy evaluation indicated that she experienced significant pain and spasms post-surgery.[36]  Her problem areas included decreased range of motion and right lower extremity strength, gait dysfunction, constant pain, and decreased tolerance for rising from a seated position and walking up and down stairs.[37]

During this time Soto also treated with Dr. Deborah Bernal, M.D. for her low back and neck pain.[38]  Dr. Bernal noted that Soto used a cane and a walker since her right hip surgery and was complaining of muscle cramps in her legs.[39]  It was noted that Dr. Bernal provided Soto with instructions regarding her cane height.[40]  At a surgery follow up in October, Soto ambulated well with a cane and limped without it,

---

[34] Tr. 495.
[35] *Id.*
[36] Tr. 502.
[37] *Id.*
[38] Tr. 512.
[39] Tr. 515.
[40] Tr. 512.

experienced muscle spasms, and exhibited 5/5 strength in her hips and knees.[41]  Physical therapy notes from around this time indicated that Soto's gait with a cane was steadily improving, but she reported increased right knee pain.[42]  In November, Soto's physical therapist noted an improvement of a minimal antalgic gait pattern without an assistive device, as well as minimal assistance needed from her upper extremities to complete the exercises.[43]

Soto complained of continued right knee pain and ankle pain in November, at which time it was noted that she "may have gone back to work a little early and is now having an inflammatory flareup."[44]  She exhibited an antalgic gait without an assistive device.[45]  At her third surgery follow up, Soto reported experiencing spasms in her right leg and using a cane.[46]  Her provider noted she had a valgus deformity and arthritis in her knees, and he recommended injections, which Soto

---

[41] Tr. 531.
[42] Tr. 571.
[43] Tr. 535.
[44] Tr. 707.
[45] Tr. 706.
[46] Tr. 708.

declined.[47]    At a physical therapy appointment in December, Soto's primary complaint was her knee pain, with her therapist noting she walked with an antalgic gait pattern using a cane.[48]

In January of 2023, Soto was seen at Family First Health for a follow up of her hypothyroidism, at which time a musculoskeletal examination noted that Soto was ambulating without assistance.[49]  Soto also followed up with Dr. Bernal around this time, who ordered an x-ray to evaluate Soto's leg length difference and advised her to wear a sole in her left shoe for support at all times while walking.[50]  An x-ray revealed mild valgus angulation of Soto's right leg, and that her left leg was shorter than her right.[51]    In March, at a post-surgery follow up appointment, it was noted that Soto had good motion of the hip and good strength, tenderness throughout her lumbar region and pain with straight leg raise testing, and that she had a valgus deformity of her right

---

[47] *Id.*
[48] Tr. 720.
[49] Tr. 808.
[50] Tr. 744-45.
[51] Tr. 754.

knee.[52]  The provider noted that Soto was doing well with respect to her hip, and that she declined any intervention for her ongoing lumbar and right leg pain.[53]

In April, Soto was treated at Wellspan Orthopedics, at which time she reported bilateral hip pain that was worse on her right side.[54]  On examination, she "ambulate[d] slowly and deliberately, but with no distinct gait abnormality[]" and did not use an assistive device.[55]  After obtaining x-rays, the provider indicated that Soto may have had "an extrinsic source of discomfort which most likely would be the lumbosacral spine."[56]  At her annual post-surgery follow up in August of 2023, Soto complained of increased hip pain bilaterally, and reported she received an injection two months prior.[57]  On examination, Soto exhibited good range of motion, no instability, 5/5 strength, and was "[a]mbulating well

---

[52] Tr. 829.
[53] *Id.*
[54] Tr. 775.
[55] Tr. 777.
[56] Tr. 778.
[57] Tr. 826.

with no limp and no devices[,] [and] able to sit comfortably in a chair and rise without assistance."[58]

At an urgent care visit in September, Soto reported increased low back pain.[59] The treatment notes indicated that Soto's providers believed the issue to be her back rather than her hips, although the urgent care provider noted "[s]he has yet to see spine provider from what I can see."[60] The provider ordered an MRI and a neurosurgery consult, given that Soto's "symptoms are complex and overlapping."[61]  In October, a physiatry treatment note indicated that Soto was supposed to "[u]se the heel lift at all times[,]" and provided instructions on cane height.[62]

It is against the backdrop of this record that an ALJ held a hearing on Soto's disability application on December 13, 2023.[63]  Soto and a Vocational Expert ("VE") both appeared and testified at this hearing.[64] Following this hearing, on April 19, 2024, the ALJ issued a decision

---

[58] Tr. 827.
[59] Tr. 832.
[60] *Id.*
[61] *Id.*
[62] Tr. 873.
[63] Tr. 60-74.
[64] *Id.*

11

denying Soto's application for disability benefits.[65]   The ALJ first concluded that Soto had not engaged in substantial gainful activity since her alleged onset of disability, April 4, 2022.[66]  At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Soto suffered from the following severe physical impairments: degenerative disc disease, degenerative joint disease, and obesity.[67]  At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[68]

Between Steps 3 and 4, the ALJ then concluded that Soto:

[H]a[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional postural movements except frequent balancing and stooping; avoid concentrated exposure to vibration, dangerous machinery, and unprotected heights; and work that is limited to simple and routine tasks, involving only simple, work-related decisions.[69]

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence,

---

[65] Tr. 15-38.
[66] Tr. 20.
[67] Tr. 21.
[68] Tr. 21-24.
[69] Tr. 24.

and Soto's reported symptoms. With respect to the medical opinion evidence, the ALJ considered the opinions of the state agency consultants, Drs. Nugent and Tedesco.[70] Dr. Nugent opined that Soto could perform a range of light work with occasional postural limitations, except she could never climb ladders, ropes, or scaffolds, and that she must avoid concentrated exposure to extreme cold and heat, humidity, vibration, fumes, and hazards.[71] On reconsideration, Dr. Tedesco found that Soto could perform light work with occasional postural limitations, except that she could frequently balance and stoop, and that she should avoid concentrated exposure to vibrations and hazards.[72]

The ALJ found Dr. Nugent's opinion generally persuasive, reasoning that the opinion was generally consistent with the medical record, but that more recent treatment records from April of 2023 indicated Soto could frequently balance and stoop.[73] The ALJ found Dr. Tedesco's opinion persuasive, in that the findings were consistent with

---

[70] Tr. 29-30.
[71] Tr. 103-06.
[72] Tr. 123-25.
[73] Tr. 29.

the overall record, again noting that the more recent records indicated that Soto ambulated without assistance and was advised to use a shoe insert.[74] The ALJ further stated that with respect to the environmental limitations, he found Dr. Tedesco's opinion more persuasive than Dr. Nugent's.[75]

With respect to Soto's symptoms, the ALJ found that Soto's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence.[76] Soto testified that she was working part time as a cleaner, roughly one hour per day, at the time of the hearing.[77] She reported working so few hours because of her hip pain, including the pain resulting from her unequal leg lengths.[78] Soto testified that she used a cane "[a]ll

---

[74] *Id.*

[75] Tr. 30. As we will discuss in more detail in our analysis, it is clear from the decision as a whole, and particularly from the ALJ's RFC determination, that the ALJ found Dr. Tedesco's postural and environmental limitations more persuasive and consistent with the record than Dr. Nugent's despite what appears to be a typographical error in the decision.

[76] Tr. 24-29.

[77] Tr. 63-64.

[78] Tr. 64.

the time[,]" and that she experienced leg pain and spasms in her right leg.[79]  At the time of the hearing, she was receiving injections for her back pain.[80]  She reported she was afraid to have any more surgeries because "everything just changed with them doing my hip."[81]  She further testified that her two older daughters helped her with shopping, transportation, and caring for her younger daughter.[82]

The ALJ ultimately found Soto's testimony to be inconsistent with the objective clinical findings.[83]  The ALJ recounted the objective medical evidence, which included unremarkable and abnormal findings as to her gait, as well as her testimony that she used a cane all the time.[84]  The ALJ discussed the treatment notes indicating that Soto used a cane for ambulation after her right hip surgery, but that subsequent treatment notes reflected a normal gait and that she ambulated without assistance.[85]  Further, the ALJ recognized the January 2023 findings

---

[79] Tr. 65-66.
[80] Tr. 67.
[81] Tr. 68.
[82] Tr. 69.
[83] Tr. 24-29.
[84] Tr. 25-28.
[85] *Id.*

15

that Soto's legs were unequal in length, but further noted that her provider's treatment recommendation was to use a shoe lift.[86] Ultimately, the ALJ found that Soto was not as limited as she alleged.

Having made these findings, the ALJ found at Step 4 that Soto could not perform her past relevant work but found at Step 5 that she could perform the occupations of a cashier II, storage facility rental clerk, and furniture rental consultant.[87]  Accordingly, the ALJ found that Soto had not met the stringent standard prescribed for disability benefits and denied her claim.[88]

This appeal followed.  On appeal, Soto argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to appreciate the significance of her hip replacements and the unequal length of her legs, found the state agency consulting opinions persuasive, and failed to account for her need to use a cane.  Further, the plaintiff contends that she is entitled to a remand under sentence six of Section 405(g).  This case is fully briefed and is therefore ripe for resolution.  For

---

[86] Tr. 26-27, 31.
[87] Tr. 31-32.
[88] Tr. 33.

16

the reasons set forth below, we will affirm the decision of the Commissioner.

## III.   Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[89]  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[90]   Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[91]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing

---

[89] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[90] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[91] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

evidence."[92]  However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[93]  The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[94]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[95]  Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[96]  Thus, the

---

[92] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[93] Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

[94] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

[95] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[96] Id.

question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[97]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[98] Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[99] This does not require the ALJ

---

[97] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at \*1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[98] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[99] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[100]    Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[101]

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[102]  This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the

---

[100] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).

[101] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

[102] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).

20

national economy."[103]   To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[104]

In making this determination, the ALJ follows a five-step evaluation.[105]   The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[106]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her

---

[103]  42  U.S.C.  §423(d)(2)(A);  42  U.S.C.  §1382c(a)(3)(B);  20  C.F.R. §§404.1505(a), 416.905(a).
[104] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[105] 20 C.F.R. §§404.1520(a), 416.920(a).
[106]20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

21

impairment(s)."[107]  In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[108]  Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[109]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[110]  If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[111]

---

[107] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[108] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[109] *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002).

[110] *Mason*, 994 F.2d at 1064.

[111] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[112]   Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[113]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision.  Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected

---

[112] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).
[113] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

the medical opinion based upon an assessment of other evidence.[114] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[115]    Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[116]

## C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[117] Supportability and consistency are the

---

[114] *Biller*, 962 F. Supp. 2d at 778–79.
[115] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.
[116] *Burns,* 312 F.3d 113.
[117] 20 C.F.R. § 404.1520c(c).

24

two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[118]  Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[119]  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[120]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[121]  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[122]  Further, the ALJ can credit parts of an opinion without giving

---

[118] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).
[119] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).
[120] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).
[121] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).
[122] *Mason*, 994 F.2d at 1066.

credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[123]   On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[124]

### D. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations.[125]   Our review of those determinations is deferential.[126] However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not credible."[127]   An ALJ should give great weight to a claimant's testimony

---

[123] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

[124] *Cummings*, 129 F. Supp. 3d at 214–15.

[125] *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir. 2009).

[126] *Id.*

[127] *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted).

26

"only when it is supported by competent medical evidence."[128]  As the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them."[129]

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms.[130]  Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record.[131]

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged

---

[128] *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted).

[129] *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

[130] 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p.

[131] SSR 16-3p.

symptoms.[132]  During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated considering the entire case record.[133]  This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work.[134]

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings.[135]  Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms.[136]  These factors include: the claimant's daily activities; the "location,

---

[132] 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p.
[133] 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.
[134] *Id.*
[135] SSR 16-3p.
[136] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

28

duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations.[137]

### E. The ALJ's Decision is Supported by Substantial Evidence.

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[138]   Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Soto first contends that the ALJ failed to appreciate the significance of her hip replacements and the unequal length of her legs and failed to consider this as a separate impairment.[139] To the extent the plaintiff is asserting that her unequal leg length should have been found to be its

---

[137] *Id.*
[138] *Biestek*, 139 S. Ct. at 1154.
[139] Doc. 28 at 22-25.

own severe impairment at Step 2, this argument is unavailing. At Step 2, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments.[140] An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities," or if it is "something beyond 'a slight abnormality which would have no more than a minimal effect on an individual's ability to work.'"[141] This Step 2 inquiry is a de minimis screening device used to cast out meritless claims.[142] The claimant bears the burden to show that an impairment should be considered severe.[143]

Here, while the ALJ did not explicitly find the plaintiff's unequal leg length to be a severe impairment, it is clear that the ALJ discussed the medical findings and the impact of this impairment on the plaintiff's functional ability. For example, the ALJ discussed the plaintiff's hip

---

[140] *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

[141] 20 C.F.R. 404.1520(c); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citations omitted).

[142] *McCrea*, 370 F.3d at 360; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

[143] *Bowen*, 482 U.S. at 146; *Stancavage v. Saul*, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).

replacement surgeries in the context of Listing 1.17, although he ultimately found the plaintiff did not meet this listing.[144]  He further considered the plaintiff's testimony regarding her unequal leg length and her need to use a cane to support herself.[145]  He also thoroughly recounted the medical records pertaining to the plaintiff's surgeries and subsequent medical treatment.[146]    Finally, he considered the medical opinion evidence, which considered the records of the plaintiff's hip surgeries and unequal leg length.[147]    Ultimately, the ALJ found that despite her limitations, Soto could perform light work with occasional postural limitations, except she could frequently balance and stoop.[148]  Thus, any exclusion of these impairments at Step 2 was harmless, as the ALJ clearly considered these impairments and how they impacted the plaintiff's ability to function.

Moreover, and fundamentally, the plaintiff fails to identify how she is more limited than the ALJ found.  Indeed, it is the plaintiff's burden to

---

[144] Tr. 22.
[145] Tr. 24-25.
[146] Tr. 24-28.
[147] Tr. 29-30.
[148] Tr. 24.

prove she is unable to work, and her brief fails to identify additional limitations based on these impairments.  Instead, she simply argues that the ALJ mischaracterized her doctor's recommendation that she wear a shoe lift, and that the ALJ failed to appreciate the significance of the plaintiff's symptoms.[149]   These arguments are unavailing and fail to identify limitations that the ALJ allegedly failed to account for. Accordingly, we find the ALJ's Step 2 determination is supported by substantial evidence.

Soto next contends that the ALJ erred in finding the two consulting opinions persuasive.[150]   She first points to inconsistent language in the ALJ's decision, in which the ALJ states that "the undersigned notes that Dr. Tedesco's findings are more persuasive than Dr. Nugent's findings because the postural and environmental limitations in *Dr. Nugent's*

---

[149] While the plaintiff strenuously argues that the ALJ erroneously relied on what she characterizes as the lone treatment note from April 2023 that the plaintiff ambulated without assistance, there are several other treatment notes in the record indicating that the plaintiff ambulated without assistance after surgery, including her one-year surgical follow-up appointment in August of 2023. *See* Tr. 826-27; *see also* Tr. 535, 801, 808.

[150] Doc. 28 at 25-29.

findings are more consistent with the record as a whole."[151]  Read alone, this statement would appear to suggest that the ALJ found Dr. Tedesco's opinion more persuasive even though Dr. Nugent's findings were more consistent with the record.  However, "[i]n the context of social security cases, errors in ALJ decisions have been excused as mere scrivener's errors when the ALJ's intent was apparent."[152]

Here, in our view, it is clear that the ALJ found Dr. Tedesco's opinion, and particularly the postural and environmental limitations, to be more consistent with the record.  For example, in discussing Dr. Tedesco's opinion, the ALJ explicitly reasoned that the more recent April 2023 records and imaging were consistent with Dr. Tedesco's postural limitations to frequent balancing and stooping.[153]  The ALJ also explicitly found that these notes supported Dr. Tedesco's environmental limitations to avoid concentrated exposure to vibration, machinery, and

---

[151] Tr. 30 (emphasis added).

[152] *Amy A. v. Kijakazi*, 2021 WL 5864063, at *5 (D.N.J. Dec. 10, 2021) (quoting *Hudon v. Astrue*, 2011 WL 4382145, at *4 (D.N.H. Sept. 20, 2011)) (internal quotation marks omitted).

[153] Tr. 29.

heights.[154]  The ALJ explicitly included Dr. Tedesco's findings in the RFC assessment.[155]  Accordingly, we conclude that the ALJ's typographical error is harmless, as the ALJ's intent in finding Dr. Tedesco's opinion more persuasive and more consistent with the record is apparent from the decision as a whole.  Thus, a remand is not required.

Soto also argues that finding these opinions persuasive was error because these opinions found that Soto's leg lengths were approximately equal, and as such, were not consistent with the medical evidence showing her unequal leg lengths.[156]  But the plaintiff's reliance on the wording in Dr. Nugent's opinion is entirely misplaced.  While she appears to contend that it was Dr. Nugent's opinion that Soto's leg lengths were "approximately equal,"[157] it is clear from Dr. Nugent's findings that this was not his own opinion but rather a recitation of Soto's own medical records from her providers.[158]  Indeed, Dr. Nugent's opinion recites the medical records he reviewed, which included a September 2022

---

[154] Tr. 29-30.
[155] Tr. 24.
[156] Doc. 28 at 29.
[157] *Id.*
[158] *See* Tr. 100.

34

examination and x-ray interpretation in which the provider noted Soto's length lengths were approximately equal.[159]    The language in Dr. Nugent's opinion is taken verbatim from the treatment notes from Soto's post-operative visit in September of 2022.[160] Dr. Tedesco's opinion, which was rendered later, specifically considered the January 2023 imaging showing that Soto's right leg was longer than her left, as well as the April 2023 assessment where Soto ambulated without assistance.[161] Accordingly, the plaintiff's contention that the ALJ relied on two consulting opinions that were inconsistent with the record and that did not adequately consider all of her impairments is entirely unavailing.

Finally, Soto contends that the ALJ erred in assessing her reported need to use a cane for ambulation.  She appears to rely on her subjective testimony that she needed a cane to ambulate at all times, coupled with her argument that "there is almost nothing that suggests that any physician does not think a cane is necessary."[162]   In some cases, the

---

[159] *Id.*
[160] *See* Tr. 494.
[161] Tr. 120.
[162] Doc. 28 at 31.

claimant's use of a cane may be outcome-determinative. However, the burden lies with the claimant initially to show that the cane is medically required by providing "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]"[163]    If the claimant demonstrates such a medical necessity, then the ALJ must directly "address the evidence concerning Plaintiff's use of" an assistive device.[164] The failure to do so may require a remand.[165]

Here, the ALJ found that Soto's use of a cane was not medically necessary.[166] He considered her subjective testimony that she used a cane at all times but reasoned that there was no medical evidence that documented her need for a cane for continuous use.[167] The ALJ found that while the records showed Soto used a cane after her hip surgery, more recent treatment records demonstrated that she ambulated without

---

[163] *Howze v. Barnhart*, 53 F. App'x 318, 222 (3d Cir. 2002) (citing SSR 96-9p).

[164] *Steward v. Comm'r of Soc. Sec.*, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009).

[165] *Id.*

[166] Tr. 28.

[167] *Id.*

an assistive device.[168]  Indeed, the medical records indicate that in April 2023 and in August of 2023 at her annual surgery follow up, Soto was ambulating without a cane.[169]  Accordingly, we cannot conclude that the ALJ erred in finding Soto's use of a cane not medically necessary.  Rather, the ALJ considered Soto's testimony against the objective medical evidence and found that Soto was not as limited as she alleged.  There is no basis for a remand.

Given that the ALJ considered all the evidence and adequately explained the decision for including or discounting certain limitations as established by the evidence, we find no error with the decision. Therefore, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case.

---

[168] *Id.*

[169] Tr. 777 ("The patient ambulates slowly and deliberately, but with no distinct gait abnormality. She is not using assistive device."); Tr. 826-27 ("Ambulating well with no limp and no devices.").

## F. The Plaintiff is Not Entitled to a Remand under Sentence Six.

Soto additionally contends that this case should be remanded for further consideration of the functional capacity evaluation rendered by Dr. Bernal. However, after consideration, we conclude that this evidence does not entitle the plaintiff to a remand.

Under sentence six of 42 U.S.C. § 405(g), this court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]"[170] Accordingly, to obtain a remand based on new evidence, a plaintiff must demonstrate that the evidence is "new" and "material."[171] Evidence is not new if it is "merely cumulative of what is already in the record,"[172] or if it was "in existence or available to the claimant at the time of the administrative proceeding."[173] To be material, the evidence must be "relevant and

---

[170] 42 U.S.C. § 405(g).
[171] Szubak v. Sec'y of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984).
[172] *Id.*
[173] *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).

38

probative."[174]  Further, the claimant must demonstrate "good cause" for why the evidence was not incorporate into the record.[175]  Finally, there must be a "reasonable probability that the additional evidence would change the outcome of the decision."[176]  This evidence may be considered to determine if a remand is required under sentence six; however, it may not be considered in assessing whether the ALJ's decision was supported by substantial evidence.[177]

Soto contends that the functional capacity evaluation by Dr. Bernal, which she apparently underwent in December of 2023 but did not receive a report of until February or April of 2024, entitles her to a remand and to have this evidence considered.[178]  However, we conclude that this evidence is not new, and further, that the plaintiff fails to show good cause for not presenting this evidence to the ALJ.

---

[174] *Id.*

[175] *Id.*

[176] 20 C.F.R. § 404.970(a)(5); 20 C.F.R. § 416.1470(a)(5) (effective January 17, 2017); *Walters v. Saul*, 452 F. Supp. 3d 164, 183 (M.D. Pa. 2020).

[177] *Szubak*, 745 F.2d 831, 833 (3d Cir. 1984); *Walters v. Saul*, 452 F. Supp. 3d 164, 183 (M.D. Pa. 2020).

[178] Doc. 28 at 32-37.

39

First, this evidence is not "new." While it is true that Soto did not obtain the report of the functional capacity evaluation until after the administrative hearing, the examination was either ordered or conducted by a provider that Soto treated with since at least March of 2022.[179] Thus, while Soto did not have this functional capacity evaluation in-hand at the time of the administrative hearing, we cannot conclude that this evidence was not available to her since she could have secured an examination and report from Dr. Bernal during the relevant period.[180]

In a similar vein, the plaintiff has not shown good cause for failing to present the evidence to the ALJ. As we have explained, the plaintiff treated with Dr. Bernal since before her alleged onset of disability. Accordingly, she could have requested a functional capacity evaluation at any time prior to the administrative hearing. Further, the plaintiff's

---

[179] *See* Tr. 523 (March 25, 2022 office visit with Dr. Bernal).

[180] *See e.g.*, *Black v. Colvin*, 2015 WL 1275926, at *6 (W.D. Pa. Mar. 19, 2015) (finding that the plaintiff's evidence from her primary care physician was not "new" because she could have secured it from her physician prior to the ALJ's decision, and thus it was "available" to her); *Fraser v. Astrue*, 2009 WL 948341, at *2 (E.D. Pa. Apr. 8, 2009) (determining that the letter from the plaintiff's treating physician was not "new" because the treating doctor "could have provided a letter of this nature to plaintiff prior to the hearing in front of the ALJ.").

counsel at the administrative hearing represented that he received the report prior to the ALJ's decision in this matter, although it is not entirely clear when exactly he received the report.[181]  But "it is a well-established principle that mere failure to obtain evidence before the ALJ made a determination when it could have been obtained does not amount to 'good cause.'"[182]  Accordingly, "the fact that [the report] did not exist at the time of the hearing before the ALJ does not show that [the plaintiff] had good cause for not obtaining an examination and report in sufficient time to present such to the ALJ."[183]

In sum, we conclude that the plaintiff's evidence is not new, and further, that she fails to show good cause for not presenting this evidence to the ALJ.  Accordingly, a remand under sentence six is not appropriate.

---

[181] *See* Doc. 28-2.

[182] *Simonson v. Berryhill*, 2017 WL 5632691, at *4 (M.D. Pa. Nov. 22, 2017) (*citing Scatorchia v. Comm'r of Soc. Sec.*, 137 F. App'x 468, 472 (3d Cir. 2005)).

[183] *Byers v. Bisignano*, 2026 WL 267454, at *3 (M.D. Pa. Feb. 2, 2026).

## IV.    Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 17th day of March 2026.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

42